IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON C. SCHEID, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| KILOLO KIJAKAZI,<br>Commissioner of Social Security, | : No. 22-cv-00207-RAL |
| Defendant | : |

**RICHARD A. LLORET**  October 13, 2023
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Jason Scheid's application for Social Security disability benefits. The ALJ determined that Mr. Scheid was able to do light work with some restrictions and so was not disabled under the definition of the Social Security Act ("SSA"). R. 28.[1] Plaintiff requests review of the ALJ's decision, alleging that the ALJ did not properly consider evidence regarding Mr. Scheid's history of workplace limitations and erroneously assessed the severity of Mr. Scheid's back injury when determining his residual functional capacity ("RFC"). Doc. No. 11 ("Pl. Br."). Because I find that the ALJ erred, I will remand the decision.

## PROCEDURAL HISTORY

On March 17, 2020, Mr. Scheid filed an application for Title II Social Security Disability Insurance Benefits ("DIB"). In his application, Mr. Scheid alleged a disability onset date of February 20, 2020, citing degenerative disc disease, bipolar disorder,

---

[1] All references to the administrative record will be listed as "R. ____". The administrative record is document number eight on ECF.

depression, hepatitis C, stomach ulcers, and gallbladder problems. R. 123–125. Mr. Scheid's application was denied initially on September 14, 2020 (R. 126) and on reconsideration on November 24, 2020. R. 131. On December 3, 2020, Mr. Scheid requested a hearing before an ALJ. R. 134. The request was granted, and a telephonic hearing was held on April 26, 2021, at which Mr. Scheid was represented by counsel. *See* R. 35–73. Mr. Scheid and a vocational expert testified at the hearing. *See* R. 35–73. Following the hearing, the ALJ found that Mr. Scheid was not disabled. R. 28. On November 15, 2021, the Appeals Council denied Mr. Scheid's request for review, making the ALJ's determination the final determination. R. 1–3. Mr. Scheid then filed an appeal in this Court. Doc. No. 1. In July 2022, this matter was reassigned to me. Doc. No. 15.

## FACTUAL BACKGROUND

### A.     The Claimant's Background

Mr. Scheid was 49 years old at the onset date of the alleged disability, making him a "younger person" under the regulations. R. 27; 20 C.F.R. §§ 404.1563. Mr. Scheid subsequently changed age category into a "person closely approaching advanced age." R. 27; 20 C.F.R. §§ 404.1563. Mr. Scheid has past relevant work as an extruder operator, warehouse worker, and inventory clerk. R. 27. However, he has not been employed since he was terminated from his inventory clerk position on February 20, 2020. R. 20.

### B.     The ALJ's Decision

The ALJ found that Mr. Scheid was not disabled under the SSA during the relevant period. R. 20. In reaching this decision, the ALJ made the following findings of

fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[2]

Prior to step one, the ALJ determined that Mr. Scheid met the insured status requirements of the SSA.[3] R. 20. At step one, the ALJ confirmed that Mr. Scheid had not engaged in substantial gainful activity during the alleged disability period. R. 20. At step two, the ALJ determined that Mr. Scheid had four severe impairments: lumbar degenerative joint disease, asthma, depression, and anxiety. R. 20. At step three, the ALJ compared Mr. Scheid's impairments to those contained in the Social Security Listing of Impairments ("Listing")[4] and found that Mr. Scheid's impairments, individually and jointly, did not meet or medically equate to the severity of one of the listed impairments. R. 20–21.

Prior to reviewing step four, the ALJ determined that Mr. Scheid had the residual functional capacity ("RFC") to perform light work with an exception "that he can sit, stand, or walk 6 hours each per 8-hour workday." R. 22 (citing 20 CFR 404.1567(b)). The ALJ determined that Mr. Scheid "can occasionally climb ramps and stairs and frequently balance, stoop, kneel, crouch, and crawl" but that he "cannot climb ladders,

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] When an applicant is seeking disability insurance benefits ("DIB") the ALJ must determine the applicant's insured status. 20 C.F.R. § 404.101(a). If an applicant is "neither fully nor currently insured, no benefits are payable based on [the applicant's] earnings." *Id*. The applicant is able to recover DIB only through their last insured date. 42 U.S.C. § 423(a).

[4] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

ropes, or scaffolds" and "can have no concentrated exposure to vibration, unprotected heights, and moving mechanical parts." R. 22. The ALJ further determined that Mr. Scheid "can perform simple, routine, and repetitive tasks, but that he cannot work at production pace" and that Mr. Scheid can have "occasional interaction with the public and supervisors." R. 22.

At step 4, the ALJ determined that Mr. Scheid was unable to perform any past relevant work, due to his prior relevant work falling under "SVP 5, medium exertional level, actually performed at light," "SVP 2, medium exertional level, performed at light," and "SVP 5, light exertional level" and given the vocational expert's testimony that Mr. Scheid's residual functional capacity precludes past work. R. 27. The ALJ also determined that Mr. Scheid was a younger individual, per 20 C.F.R. § 404.1563, on the alleged disability onset date, but that he subsequently changed age category to closely approaching advanced age. R. 27. The ALJ determined that Mr. Scheid had at least a high school education and that transferability of job skills was not material to the determination of disability because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills." R. 27 (citing SSR 82-42 and 20 CFR Part 404, Subpart P, Appendix 2). At step five, the ALJ determined that there were jobs "that exist in significant numbers in the national economy" that Mr. Scheid can perform, including the job of a routing clerk, a sorting clerk, or a cleaner. R. 27–28. The ALJ ultimately concluded that Mr. Scheid was not disabled during the insured period. R. 28.

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422,

4

427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id*. at 121–22. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id*. at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

An ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The question on review is whether, reading the ALJ's opinion as a whole against the record, the reviewing court can understand why the ALJ reached his decision and can identify substantial evidence in the record supporting that decision. *Caruso v. Commr. of Soc. Sec.*, 99 Fed. Appx. 376, 379 (3d Cir. 2004)).

## DISCUSSION

Mr. Scheid, through counsel, presents two issues for my review. Pl. Br. at 1. First, he argues that the ALJ erred in failing to consider his history of workplace limitations when assessing his residual functional capacity. Pl. Br. at 1. Next, he argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ "performed an erroneous assessment" of Mr. Scheid's back condition. Pl. Br. at 1. The Commissioner argues that there is substantial evidence in the record to support the ALJ's decision. Doc. No. 12, at 1 ("Com. Br."). I will focus on the steps that required the ALJ to review how Mr. Scheid's back injury impacted his residual functional capacity because Mr. Scheid alleges that the ALJ erred in reaching that

determination. Based upon the discussion below, I find that this matter warrants remand.

### A. The ALJ applied the wrong Listing category when evaluating Mr. Scheid's back injury.

At step two, the ALJ determined that Mr. Scheid had four severe impairments: lumbar degenerative joint disease, asthma, depression, and anxiety. R. 20. A severe impairment occurs when there is an "impairment or combination of impairments which significantly limits [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions (such as walking, sitting, or carrying); "[c]apacities for seeing, hearing, and speaking;" following instructions; judgement; appropriate responses to workplace interactions; and response to "changes in a routine work setting." 20 C.F.R. § 416.922.

At step three, the ALJ determined that Mr. Scheid's impairments did not meet or medically equal the severity of one of the listed impairments. R. 20. "[A]n ALJ is charged with determining whether a claimant's impairment or combination of impairments meets, or medically equals, the criteria of an impairment listed in 20 C.F.R. §§ 404.1520(d) and 416.920(d)." *Diaz*, 577 F.3d at 502. Here, the ALJ determined that, while Mr. Scheid established that he suffers from degenerative disease of the lumbar spine, the evidence in the record "does not demonstrate the severity of

7

abnormality plus physical limitation to meet the severity of listing 1.18."[5] R. 21. This analysis is erroneous because Listing 1.18 relates to abnormalities or injuries of bones in the lower or upper extremities. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In contrast, abnormalities or injuries of the skeletal spine, like Mr. Scheid's, should be evaluated under Listing 1.15 or 1.16. *See id*.

While a positive finding at step three would have eliminated the need to proceed through steps four and five, it is unclear whether Mr. Scheid would have prevailed at step three had the ALJ's analysis used the correct Listing category. Given that I am remanding for other reasons, I need not resolve this issue. The ALJ may reconsider this on remand.

> **B.**   **The ALJ erred when determining Mr. Scheid's Residual Functional Capacity.**

Prior to step four, the ALJ determined Mr. Scheid's residual functional capacity. R. 22. "Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 416.945. The ALJ found that Mr. Scheid's RFC permitted light work where "that he can sit, stand, or walk 6 hours each per 8-hour workday." R. 22 (citing 20 CFR 404.1567(b)). The ALJ determined that Mr. Scheid's work should be limited to "simple, routine, and repetitive tasks" with "occasional interaction with the public and supervisors" and that "he cannot work at production pace." R. 22.

---

[5] "Listing 1.18 requires documentation of (A), (B), (C) and (D): (A) chronic joint pain or stiffness; and (B) abnormal motion, instability, or immobility of the affected joint(s); and (C) anatomical abnormality of the affected joint(s) noted on: (1) physical examination or (2) imaging); and (D) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: (1) A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; OR (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; OR (3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work related activities involving fine and gross movements." R. 21.

> 1. *The ALJ did not err by finding the medical records from Mr. Scheid's primary care physician Dr. Bieber were not persuasive.*

Plaintiff alleges that the ALJ erred in his assessment of the treating records by Mr. Scheid's primary care physician Dr. Bieber and that this error caused the ALJ to incorrectly assess the severity of Mr. Scheid's back pain. Pl. Br. 8–12. The ALJ did not ignore Dr. Bieber's conclusions, rather the ALJ determined that records from Dr. Bieber were unpersuasive because they were inconsistent with other objective evidence in the record. For example, on April 9, 2020, Dr. Bieber submitted a physical assessment that claimed Mr. Scheid "could only sit, stand, and/or walk one or two hours," that he would need "frequent unscheduled breaks in an 8-hour workday," that he could only "occasionally lift less than 10 pounds," and that he "would miss more than four days of work per month." R. 25–26. The ALJ found that this opinion was not persuasive "as it is inconsistent with the limited objective evidence" including Dr. Bieber's own June 2020 records which describe Mr. Scheid as "stable with chronic pain management and other medications." R. 24, 26. Likewise, the ALJ explained his determination that a January 2021 opinion from Dr. Bieber "overstate[d] the claimant's sitting standing and walking limitations" and was "inconsistent with the medical evidence which notes improvement with treatment." R. 26.

The fact that another conclusion may be drawn looking at the same information does not render the ALJ's determination erroneous. My review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft*, 181 F.3d at 360 (citing 42 U.S.C. § 405(g)). Because the ALJ explained his reasoning for finding Dr. Bieber's opinion unpersuasive, I find no error here.

> 2. *The ALJ erred by failing to consider Mr. Scheid's work history when evaluating his RFC.*

Plaintiff alleges that the ALJ erred in failing to consider Mr. Scheid's history of workplace limitations when assessing his RFC. Pl. Br. 3–8. I agree.

To determine a claimant's RFC, an ALJ is required to consider all of the relevant evidence presented, including information about the claimant's "prior work record." 20 C.F.R. § 404.1529; *see also* Social Security Ruling 96–8p (stating an RFC assessment "must be based on *all* of the relevant evidence in the case record, such as: . . . [e]vidence from attempts to work."). The ALJ "need not undertake an exhaustive discussion of all the evidence" *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x 771, 773–74 (3d Cir. 2004). However, an "ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous." *Landeta v. Comm'r of Soc. Sec.*, 191 F. App'x 105, 110 (3d Cir. 2006) (citing *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981)).

At the administrative hearing in this matter, the ALJ asked several questions about Mr. Scheid's past relevant work. Mr. Scheid testified that he had previously worked for six months at a Nordstrom store warehouse as a warehouse worker, but that he was forced to take a more limited role "due to [his] physical limitations." R. 41. As a warehouse worker, Mr. Scheid would "walk up to three hours a day, stand up to one hour a day, sit up to three hours a day, and the most [he] would lift was 10 pounds." R. 42. Mr. Scheid testified that, after six months, he was transferred to a more limited role as an inventory clerk. R. 43. While the amount of time Mr. Scheid spent sitting in that role "would vary from day to day," he would generally spend about "five hours a day" total sitting and the rest of the time standing and walking. R. 43–44. Mr. Scheid testified that, performed normally, the inventory clerk role would have required him to

walk out to the warehouse docking area several times a day, but that he was not able to do that because of his condition. R. 55. Mr. Scheid testified that he was "about a third" as productive as others in his role, due to his limitations. R. 55–56. Mr. Scheid also testified to taking FMLA leave while working at Nordstrom intermittently and for up to three months at a time. R. 57–58. He testified that he remained in the inventory clerk position for four-and-a-half years, while consistently receiving unsatisfactory reviews, before he was eventually terminated. R. 56.

The Commissioner argues that the ALJ did not err by failing to discuss Mr. Scheid's previous workplace limitations because "the ALJ cited far more than a mere scintilla of evidence and explained the basis of his factual finding." Com. Br. at 6. This argument ignores that the ALJ's determination that Mr. Scheid's RFC permitted light work with an exception "that he can sit, stand, or walk 6 hours each per 8-hour workday" conflicts with Mr. Scheid's testimony about the amount of time he was actually able to sit and stand in his recent roles at the Nordstrom warehouse. *See* R. 22, 42, 43–44. The ALJ did not include any information regarding Mr. Scheid's previous workplace limitations in his findings of fact, nor did he give a reason for excluding this evidence. Elsewhere in his opinion, the ALJ explains that he rejected Mr. Scheid's statements regarding "the intensity, persistence, and limiting effects of his . . . symptoms" and "significant physical limitations" because they were inconsistent with the "medical evidence and conservative treatment." R. 23. However, the ALJ failed to offer the same, or any, reasoning for disregarding Mr. Scheid's statements regarding his prior workplace limitations. Without an explanation of the ALJ's reasoning on this issue, I cannot meaningfully review the ALJ's determination. *See Plummer*, 186 F.3d at 429.

11

Therefore, I find the ALJ erred, and that remand is warranted. On remand, the ALJ is instructed to evaluate Mr. Scheid's workplace limitations and the impact, if any, on the RFC.

> 3. *The ALJ erred by failing to adequately explain his evaluation of Dr. Hammon's opinion.*

After reviewing the record, the ALJ determined that Mr. Scheid should be limited to light work where "he can sit, stand, or walk 6 hours each per 8-hour workday." R. 26. The ALJ's determination that Mr. Scheid is able to stand or to walk for up to six hours each per day is inconsistent with findings by the consultive examiner Dr. Hammon, which the ALJ found persuasive. R. 26. Because the ALJ failed to explain adequately why he concluded that Mr. Scheid could stand or walk for six hours each per eight-hour day despite Dr. Hammon's assessment that Mr. Scheid would be limited to standing or walking for only two hours each per eight-hour day, his determination regarding Mr. Scheid's RFC is not supported by substantial evidence.

Dr. Hammon performed an examination of Mr. Scheid in September 2020. R. 24, 415–434. At that examination, Dr. Hammon evaluated Mr. Scheid's physical condition and reviewed an x-ray of his lumbar spine. R. 401. Dr. Hammon diagnosed Mr. Scheid with degenerative discs of the lumbar spine with chronic back pain. R. 420. Dr. Hammon determined that, while Mr. Scheid could frequently lift up to 10 pounds, he could only occasionally carry that much weight. R. 423. As the ALJ notes in his opinion, Dr. Hammon determined that Mr. Scheid was capable of standing for up to 90-minutes at one time and walking for up to 45-minutes at one time. R. 424. Dr. Hammon determined that Mr. Scheid would only be capable of walking for up to two hours total and standing for up to two hours total within an eight-hour workday. R. 424. Framed differently, Mr. Scheid would be required to sit for at least 4 hours during an eight-hour

workday. The ALJ determined that Dr. Hammon's opinion was "somewhat persuasive" but "due to findings from the lumbar spine x-ray greater exertional limitations are supported by the record." R. 26. The ALJ's conclusion that Mr. Scheid would be able to stand or to walk for six hours each during an eight-hour workday is inconsistent with his determination that the record supported "greater exertional limitations" than those proposed by Dr. Hammon.

The ALJ appears to have based his conclusion regarding Mr. Scheid's stand/walk capabilities on conclusions reached in the initial Disability Determination by Dr. David Paul Clark and on reconsideration by Dr. Carl William Ritner. The ALJ determined that each of these opinions were "partially persuasive." R. 26. Based on their review of Mr. Scheid's medical records and functional report, both Dr. Clark and Dr. Ritner determined that Mr. Scheid would be capable of sitting, standing, or walking for six hours each per eight-hour workday. R. 90, 111. In contrast to Dr. Hammon, neither Dr. Clark nor Dr. Ritner performed an examination of Mr. Scheid before reaching their conclusions. *See* R. 91, 113.

While the ALJ notes that he found each of Dr. Hammon, Dr. Clark, and Dr. Ritner's opinions "partially persuasive," he does not explain why he adopted Dr. Clark's and Dr. Ritner's assessments of Mr. Scheid's stand/walk capabilities over Dr. Hammon's. This determination is particularly confusing in light of the ALJ's finding that Mr. Scheid would actually require greater exertional limitations than those recommended by Dr. Hammon and when considering Mr. Scheid's testimony that, as a warehouse worker, he was only able to "walk up to three hours a day, stand up to one hour a day" and, as an inventory clerk, he needed to spend about five hours a day sitting. *See* R. 26, 42, 43–44.

13

The amount of time Mr. Scheid is capable of standing or walking during an eight-hour workday is consequential to his RFC because, according to the Social Security guidelines, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983). In contrast, for a sedentary job, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday[.]" *Id.* "[T]he primary difference between sedentary and most light jobs" is that a job in the light work category "requires a good deal of walking or standing." *Id.* As Mr. Scheid notes in his brief, this distinction is particularly significant in his case because, given his age, had he been limited to sedentary work, the Medical Vocational Guidelines would have mandated a finding of disability. *See* Pl. Br. 8; 20 C.F.R. § Pt. 404, Subpt. P, App. 2(g).

Whether Mr. Scheid is capable of standing or walking for six hours during the workday also significantly affects the number jobs available to him in the economy. At the hearing, Mr. Scheid's attorney asked the vocational expert whether there are jobs in the economy for a hypothetical person of Mr. Scheid's age, education, and past relevant work who is limited to "standing and walking two hours in a workday," to which the vocational expert responded "no." R. 71. The ALJ does not address this testimony in his decision.

The ALJ is not required to accept Dr. Hammon's stand/walk opinion. However, he must set forth the reasons for crediting or discrediting relevant or pertinent medical evidence. *Burnett*, 220 F.3d at 121–22. "Although the ALJ 'may properly accept some parts of the medical evidence and reject other parts . . . he must consider all of the evidence and give some reason for discounting the evidence he rejects.'" *See Lanza v. Astrue,* No. 08-301, 2009 WL 1147911, at *7 (W.D. Pa. Apr. 28, 2009) (quoting *Colon v.*

14

*Barnhart*, 424 F.Supp.2d 805, 812 (E.D. Pa. 2006)). "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121–122 (quoting *Cotter*, 642 F.2d at 705).

The ALJ does not explain his reasoning for finding Dr. Clark's and Dr. Ritner's assessments of Mr. Scheid's stand/walk capabilities more persuasive than Dr. Hammon's, and that reasoning is not obvious to me in reviewing the record, especially not in light of the ALJ's comment that greater exertional limitations were appropriate than those recommended by Dr. Hammon.

I cannot make a proper determination on review, given the contradictory assessments of Dr. Hammon's opinion. Therefore, I find that the ALJ erred, and remand is warranted.

## CONCLUSION

Based on the above analysis, Mr. Scheid's request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings.

BY THE COURT:

 *s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**